UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **DEBORAH J. PACK,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) Case No.: 1:23-cv-00288-AMM ) |
| **SOCIAL SECURITY ADMINISTRATION, Commissioner,** | ) ) ) ) |
| **Defendant.** | ) ) |

## MEMORANDUM OF DECISION

Plaintiff Deborah J. Pack brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

**I.  Introduction**

In November 2020, Ms. Pack protectively filed an application for benefits under Title II of the Act, alleging disability as of December 7, 2016. R. 17, 96–100, 224–36. Ms. Pack alleges disability due to neck injuries, neck fusion, pain in limbs, migraines, sensitivity to light, fibromyalgia, neuropathy, rheumatoid arthritis in hands, chronic pain, back problems, restless leg syndrome, insomnia, two bulging

1

discs in neck, pain in legs and feet, tendinitis in right arm, joint pain, scoliosis, jaw pain, and muscle spasms. R. 96. She has at least a high school education and past relevant work experience as an employment specialist. R. 30.

The Social Security Administration ("SSA") initially denied Ms. Pack's application on March 5, 2021, and again upon reconsideration on September 22, 2021. R. 17, 96–106. On November 17, 2021, Ms. Pack filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 17, 124–25. That request was granted. R. 146–48. Ms. Pack received a telephone hearing before ALJ Sheila E. McDonald on June 21, 2022. R. 17, 40–66. On July 14, 2022, ALJ McDonald issued a decision, finding that Ms. Pack was not disabled from December 7, 2016 through her date of last insured, December 31, 2018. R. 17–33. Ms. Pack was fifty-three years old at the time of the ALJ decision. R. 30, 33.

Ms. Pack appealed to the Appeals Council, which denied her request for review on January 4, 2023. R. 2–4. After the Appeals Council denied Ms. Pack's request for review, R. 2–4, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On March 9, 2023, Ms. Pack sought this court's review of the ALJ's decision. *See* Doc. 1.

## II. The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging

in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20

C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Ms. Pack would meet the insured status requirements of the Act through December 31, 2018. R. 20. Next, the ALJ found that Ms. Pack "did not engage in substantial gainful activity during the period from her alleged onset date of December 7, 2016 through her date last insured of December 31, 2018." R. 20. The ALJ decided that Ms. Pack had the following severe impairments: degenerative disc disease (cervical and lumbar spine); obesity; and fibromyalgia. R. 20. The ALJ found that Ms. Pack's mental impairments of anxiety and depression were non-severe because when "considered singly and in combination, [they] did not cause more than minimal limitation in the claimant's

ability to perform basic mental work activities." R. 20. Overall, the ALJ determined that Ms. Pack "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" to support a finding of disability. R. 21.

The ALJ found that Ms. Pack "had the residual functional capacity to perform light work" with certain limitations. R. 22. The ALJ determined that Ms. Pack could: frequently climb ramps and stairs; frequently stoop, knee, and crouch; occasionally crawl; occasionally reach overhead with the bilateral upper extremities; frequently handle and finger with the bilateral upper extremities; and occasionally be exposed to extremes of cold and full body vibration. R. 22. The ALJ prohibited: exposure to hazards, including unprotected heights and hazardous machinery; and climbing ladders, ropes, or scaffolds. R. 22.

The ALJ determined that Ms. Pack "was capable of performing past relevant work as an employment specialist." R. 30.

According to the ALJ, Ms. Pack was "a younger individual" on the date of last insured and subsequently changed age category to "closely approaching advanced age." R. 30. Ms. Pack has "at least a high school education." R. 30. The ALJ determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the

5

claimant has transferable job skills." R. 30. In making her alternative finding, because Ms. Pack's "ability to perform all or substantially all of the requirements of [light] work was impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain whether there were a significant number of jobs in the national economy that Ms. Pack was capable of performing. R. 31. That expert concluded that there were indeed a significant number of such jobs in the national economy, such as cashier, sales attendant, and mail clerk. R. 31.

Based on these findings, the ALJ concluded that Ms. Pack was not under a disability as defined in the Act, from December 7, 2016, through December 31, 2018, the date of last insured. R. 31. Ms. Pack now challenges that decision.

### III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its

judgment for that of the Commissioner; instead, it must review the record as a whole and determine "if the decision is reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *Id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**IV. Discussion – The ALJ's Evaluation of Ms. Pack's Medical Opinion Evidence**

Ms. Pack argues that the ALJ's evaluation of Dr. Michael Kendrick's medical opinion violated 20 C.F.R. § 404.1520c. Doc. 13 at 7–11. Specifically, Ms. Pack

argues that "the ALJ failed to properly consider and evaluate the two main factors required by 20 C.F.R. § 404.1520c" – supportability and consistency – and to "explain how each factor impacted the overall persuasiveness of" a February 23, 2022 physical capacities evaluation by Dr. Kendrick. Doc. 13 at 7–8. As a result of this failure, Ms. Pack argues that "the ALJ's decision cannot be deemed to be supported by substantial evidence as the residual functional capacity cannot be considered to be an accurate assessment of [her] maximum remaining ability to perform basic work activities." *Id.*

The SSA has revised the applicable regulations related to medical opinion evidence. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. *See* 20 C.F.R. § 404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id.* And the ALJ "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the

claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* § 404.1520c(c). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [her] . . . decision." *Id.* § 404.1520c(b)(2). The ALJ may explain how she considered the remaining factors, but she is not required to do so. *Id.* The ALJ is not required to use "magic words" or follow a particular formula to articulate her consideration of the factors. *See id.* § 404.1520c; *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022).

Dr. Kendrick completed a form physical capacities evaluation. R. 897. The instructions state: "We need to determine your patient's ability to do work related physical activities on a sustained basis in a work setting. To assist the Social Security Administration in making this determination, please note, based on examination, which of your patient's work activities are limited. For each activity that is limited, please check as appropriate[.]" R. 897. Dr. Kendrick circled that the "most reasonable lifting and/or carrying expectation for [Ms. Pack] during a normal work day" is "10 lbs. occasionally to 5 lbs. frequently." R. 897. Dr. Kendrick also circled

that during an eight-hour workday, Ms. Pack can sit for four hours and stand or walk for four hours. R. 897. Dr. Kendrick reported that Ms. Pack did not "require an assistive device . . . to ambulate." R. 897.

Dr. Kendrick indicated by check mark that Ms. Pack may never perform these activities: climbing (stairs or ladders) and balancing; reaching (including overhead); and working with or around hazardous machinery. R. 897. Dr. Kendrick indicated by check mark that Ms. Pack may occasionally (meaning "6% to 33% of an 8-hour working day") perform these activities: pushing and pulling movement (arm and/or leg controls); gross manipulation (grasping, twisting, and handling); fine manipulation (finger dexterity); bending and/or stooping movements; environmental problems (allergies, dust, etc.); and operating motor vehicles. R. 897.

Dr. Kendrick indicated by check mark that Ms. Pack was "likely to be absent from work" four days per month "as a result of the impairments." R. 897. Dr. Kendrick was prompted to "explain and briefly describe the degree and basis for any restriction checked above," and he wrote: "The patient has had previous neck surgery and has multilevel degenerative changes in her cervical and lumbar spine. She has persistent neuroforaminal stenosis and has failed spinal cord stimulation and has been evaluated for additional surgery[.] Pain is distracting to maintaining gainful employment." R. 897.

The ALJ considered Dr. Kendrick's medical opinion and discussed it in her residual functional capacity analysis, R. 28–29, as follows:

> I considered the physical capacities evaluation prepared in February 2022 by the claimant's pain physician, Michael Kendrick, M.D. (Exhibit B14F). I am only partially persuaded by Dr. Kendrick's assessment. I would note at the outset that the form provided by Dr. Kendrick was created by the claimant's representative and consisted exclusively of a series of questions, which save for a couple of questions, merely, seek "yes" or "no" answers or circle graded response. These circled responses provide little narrative regarding why the selected circled response was chosen and are generally devoid of insight into the reasons behind the conclusions. Thus, his responses are not adequately supported and are generally conclusory with limited probative value.
>
> While Dr. Kendrick does provide a narrative regarding his selections, he merely notes the diagnoses the claimant is being treated for more recently instead of the state of the claimant's condition on or before December 31, 2018. So too, Dr. Kendrick's own treatment records during the relevant period do not support the limitations he indicates. I note for example, that in July 2018, the claimant reported that "the current treatment plan and medication regimen is working well to provide adequate pain relief at this time" and "denies any difficulty performing ADLs" (Exhibit B6F/106). She is consistently noted throughout the treatment records to be ambulating normally. She did have tenderness to her cervical spine, noted throughout this exhibit for years with decreased extension and flexion and diminished rotation in her neck and cervical spine, with neither "decreased" or ["]diminished" quantified by Dr. Kendrick. She continued to receive cervical epidural injections during the relevant period. I note also that the claimant was on non-opioid treatment as a result of her use of marijuana which was contraindicated.

> Throughout the relevant period the claimant continued to smoke which was likewise recommended against. While the claimant was referred for physical therapy and aquatic therapy after the date of last insured, the claimant generally failed to follow these directions (Exhibit B6F/36 and 72). I would note also that while Dr. Kendrick assessed the claimant with no overhead reaching, in fact, the medical records indicate only overhead **lifting** exacerbates her pain (Exhibit B6F/72). Notably, in 2016 EMG testing of the bilateral upper extremities was negative for any neuropathy or radiculopathy (Exhibit B1F/11). Throughout this period, there was never a recommendation for surgery on the claimant's neck. Finally, I would note that there is no substantial evidence to support his "guesstimate" that the claimant would miss more than 4 days of work per month. There are no reports of the claimant failing to appear for scheduled appointments which would be the only basis upon which Dr. Kendrick could assess mixed work. Overall, I am not persuaded by Dr. Kendrick's assessments (Exhibit B14F).

Ms. Pack argues that the ALJ failed to "separately consider" supportability and consistency, "and then explain how each factor impacted the overall persuasiveness of each medical opinion." Doc. 13 at 8. Specifically, Ms. Pack argues that the ALJ's disagreement with the form used by Dr. Kendrick is irrelevant. *Id.* at 10. Ms. Pack also argues that "the ALJ also had a regulatory obligation to compare Dr. Kendrick's opinion to the rest of the record" and did not "properly consider the consistency factor." *Id.* at 10–11 (citing 20 C.F.R. § 404.1520c(b)(2)).

The Commissioner argues that substantial evidence supports the ALJ's finding that Dr. Kendrick's opinion was "partially persuasive." Doc. 14 at 6–17. Specifically, the Commissioner argues that "[t]he regulations do not require the ALJ

12

to use 'magic language' or follow a particular formula to articulate consideration of the factors." *Id.* at 7.

As an initial matter, the ALJ "considered th[is] medical opinion[] . . . in accordance with the requirements of 20 CFR 404.1520c." R. 22. Additionally, she stated: "As for medical opinions . . . , the regulations provide that we will not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinions, including those from medical sources." R. 28. The ALJ stated that she considered "supportability, consistency, relationship with the claimant, specialization, and other factors." R. 28. The ALJ articulated how persuasive she found the opinion, as required by the regulations. R. 28 ("I am only partially persuaded by Dr. Kendrick's assessment."); *see* 20 C.F.R. § 404.1520c(b).

The ALJ applied the correct legal standards in evaluating Dr. Kendrick's opinion, and substantial evidence supports her finding that it was "partially" persuasive because it included responses that were "not adequately supported and are generally conclusory with limited probative value," included diagnoses post-date of last insured, and included findings that were inconsistent with the medical records. *See* R. 29. Before the ALJ made this finding with respect to Dr. Kendrick's physical capacities evaluation, the ALJ detailed Ms. Pack's history of severe impairments and the treatment she received continuing well-past her date of last insured. R. 23–27. In this section of her decision, the ALJ specifically referenced Ms. Pack's "pain

13

management therapy," which "resulted in overall pain reduction without evidence of significant side effects and no evidence of significant functional restriction." R. 24. The ALJ also summarized the medical records and stated that "examinations during the relevant period show complaints of tenderness over the cervical spine and some limitation in range of motion, examinations routinely denote normal muscle strength, normal sensation and normal gait." R. 24; *see also* R. 25–27. The ALJ discussed imaging records and test results during the relevant period. R. 24–25.

Under the new regulations, the ALJ adequately addressed the supportability and consistency factors of Dr. Kendrick's medical opinion. Despite Ms. Pack's assertion with respect to the non-narrative portion of the physical capacities evaluation that "[t]he ALJ's initial argument is nothing more than a disagreement with how Dr. Kendrick presented his opinions[,]" the ALJ did not focus on the format of the questions. Doc. 13 at 9. Instead, the ALJ noted that because the "circled responses provide little narrative regarding why the selected circled response was chosen and are generally devoid of insight into the reasons behind the conclusions," Dr. Kendrick's non-narrative responses "are not adequately supported and are generally conclusory with limited probative value." R. 29.

With respect to the narrative portion of the ALJ's decision, the ALJ identified an inconsistency with respect to the date of last insured and addressed it. R. 29. The ALJ stated that the physical capacities evaluation contains "diagnoses the claimant

is being treated for more recently instead of the state of the claimant's condition on or before December 31, 2018," and that the resulting limitations included in the narrative response are not supported by "Dr. Kendrick's own treatment records during the relevant period." R. 29. For example, the physical capacities evaluation, included a discussion of lumbar degenerative disc disease, which he did not treat her for until June 2021 and a spinal cord stimulation implant, which Ms. Pack did not receive until 2021. R. 897.

Although the ALJ specified a July 2018 medical record, the ALJ properly considered all of Dr. Kendrick's medical records and referred to treatment records and the exhibit in its entirety. R. 29. The ALJ remarked that in July 2018, Ms. Pack's current treatment plan and medication regimen was "working well to provide adequate pain relief at this time," Ms. Pack denied any difficulty in her activities of daily living, and Ms. Pack ambulated normally. R. 29 (cleaned up).  She also noted that Ms. Pack had "tenderness to her cervical spine," which was "noted throughout this exhibit for years with decreased extension and flexion and diminished rotation in her neck and cervical spine." R. 29. The ALJ also noted that Ms. Pack received cervical epidural injections during the relevant period. R. 29. The ALJ's decision reflects that she considered Dr. Kendrick's own examination findings in her analysis. *See* R. 29.

Additionally, despite Ms. Pack's argument to the contrary, the ALJ cited other medical evidence in the record that was inconsistent with Dr. Kendrick's opinion. *See* R. 29. For example, Ms. Pack's restriction to non-opioid treatment because of THC use and the exacerbation of pain with overhead lifting was discussed by another medical provider. R. 477. The ALJ also cited a 2016 EMG test performed by a neurologist. R. 319.

The ALJ applied the correct legal standards in evaluating Dr. Kendrick's opinion and addressed both supportability and consistency in her evaluation. Substantial evidence supports the ALJ's finding that Dr. Kendrick's opinion was partially persuasive. Ms. Pack has not shown that the ALJ erred in her consideration of the medical opinion evidence.

## V.   Conclusion

The ALJ's determination that Ms. Pack is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore affirmed. A separate order will be entered.

**DONE** and **ORDERED** this 7th day of March, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE